UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JEROME WILLIAMS,                          )
                                          )
                        Petitioner        )
                                          )
            vs.                           )      CAUSE NO. 3:10-CV-531 RM
                                          )      (Arising out of 3:08-CR-72(01) RM)
UNITED STATES OF AMERICA,                 )
                                          )
                        Respondent        )


OPINION and ORDER

On November 5, 2008, a jury found Jerome Williams guilty of distribution of 50 grams or more of cocaine base (Count 1), in violation of 21 U.S.C. § 841(a)(1), and possessing a firearm in furtherance of a drug trafficking crime (Count 2), in violation of 18 U.S.C. § 924(c). On April 3, 2004, the court imposed a term of life imprisonment on Count 1 and a term of 60 months on Count 2, with those terms to be served consecutively, ten years of supervised release, and a $200 special assessment. The court of appeals affirmed Mr. Williams' conviction and sentence, United States v. Williams, 584 F.3d 714 (7th Cir. 2009), and the Supreme Court denied his petition for writ of certiorari on March 29, 2010. Mr. Williams filed a timely petition pursuant to 28 U.S.C. § 2255 asking that his sentence be vacated and the charges against him be dismissed. The government filed its response and Mr. Williams his reply. Mr. Williams has also filed a motion for appointment of counsel, a motion to proceed in forma pauperis, and a motion for summary judgment and immediate release.

For the reasons discussed in this opiniong, the court denies Mr. Williams'
§ 2255 petition in part, grants his motion for appointment of counsel, and denies
his other two motions. Further proceedings will be scheduled under separate
order.

Mr. Williams challenges his conviction and sentence based on his claims
that Attorney F. Jay Stevens provided ineffective assistance before and during trial
and Attorney David Jones provided ineffective assistance at sentencing and on
appeal. "To prevail on his ineffective assistance of counsel claim, [Mr. Williams]
must show that [his] counsel's performance was deficient and that the deficient
performance prejudiced his defense." United States v. Lathrop, 634 F.3d 931, 937
(7th Cir. 2011). "In order to satisfy the prejudice prong, [Mr. Williams] must
establish that 'there is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have been different.'"
Taylor v. Bradley, 448 F.3d 942, 948 (7th Cir. 2006) (quoting Strickland v.
Washington, 466 U.S. 668, 687-688, 694 (1984)).

A court's "review of the attorney's performance is 'highly deferential' and
reflects 'a strong presumption that counsel's conduct falls within the wide range
of reasonable professional assistance; that is, the defendant must overcome the
presumption that, under the circumstances, the challenged action might be
considered sound trial strategy.'" Koons v. United States, __ F.3d __, 2011 WL
1584998, at *3 (7th Cir. Apr. 28, 2011) (quoting Davis v. Lambert, 388 F.3d 1052,
1059 (7th Cir. 2004)). "The important inquiry is 'whether counsel's conduct so

undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" <u>United States v. Recendiz</u>, 557 F.3d 511, 531 (7th Cir. 2009) (*quoting* <u>Strickland v. Washington</u>, 466 U.S. at 686)).

The court addresses Mr. Williams' claims against his two attorneys separately.

## I. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Mr. Williams claims his trial counsel, F. Jay Stevens, was ineffective because Mr. Stevens didn't: (1) inform Mr. Williams that he'd be facing a mandatory life sentence if he went to trial; (2) object or move for dismissal based on the government's grouping (in Count 1) of multiple violations that amounted to 50 grams of cocaine base; (3) object to the lack of drug test results and a laboratory report at trial; (4) investigate and call Demetrius Williams, Anthony Martin, Kelli Liester, Tajuanna Norris, Regina Morrell, Charles Gilliam, or Peggy Elzey as defense witnesses; (5) move for dismissal on the grounds that (i) there was no probable cause for Mr. Williams' arrest that would give this court subject matter jurisdiction, (ii) the informants weren't taken before a magistrate for a reliability determination, and (iii) the agent didn't affirm "the dealing of any drugs to anyone at anytime;" (6) object to the government's failure to collect potentially exculpatory evidence or preserve evidence that was the basis for the prosecution; (7) move for dismissal of the indictment based on vindictive prosecution and retaliation by the government; (8) move to suppress the government's use of false

and perjured testimony at trial; and (9) make a verbal motion for judgment of acquittal at the close of the government's case-in-chief.

*(1) Prediction of Sentence*

Mr. Williams first claims he received ineffective assistance when Mr. Stevens didn't review the presentence investigation report before trial and advise Mr. Williams that if he proceeded to trial and was convicted, he could receive a life sentence. Mr. Williams says that had counsel informed him that going to trial could result in a life sentence, he would have accepted the government's 15-year offer. In support, he submits a copy of an unfiled plea agreement (signed by Assistant United States Attorney Donald Schmid, but not by Mr. Williams or his counsel) that contains the following language: "The government and the defendant agree, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, to make a binding recommendation for a sentence of 15 years imprisonment." Petr. Memo., Exh. A, at ¶ 9(h). Mr. Williams summarily concludes, quoting from Strickland v. Washington, 466 U.S. at 694, that "there is a reasonable probably that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Petr. Memo., at 14. The court can't agree.

Even if the court assumed that counsel's calculation of Mr. Williams' potential sentence was not undertaken in good faith, *but see* United States v. Martinez, 169 F.3d 1049, 1053 (7th Cir. 1999) ("A defense attorney cannot promise his client a particular sentence; all he can do is make a prediction . . . In

4

this circuit, an attorney's mere inaccurate prediction of a sentence does not demonstrate the deficiency component of an ineffective assistance of counsel claim."); <u>United States v. Barnes</u>, 83 F.3d 934, 940 (7th Cir. 1996) ("[A] mistaken prediction is not enough in itself to show deficient performance, even when that mistake is great, as is the case when an attorney errs about whether his client will be classified as a career offender."), Mr. Williams still must establish prejudice by showing "through objective evidence that there is a reasonable probability that, but for counsel's inadequate performance, he would have accepted the government's offer." <u>Paters v. United States</u>, 159 F.3d 1043, 1047 (7th Cir. 1998). Mr. Williams hasn't provided that evidence. He hasn't alleged or argued that counsel advised him to reject the plea offer; he doesn't claim that counsel insisted on proceeding to trial; he hasn't alleged or provided support for a finding that the court would have accepted a plea agreement containing a binding recommendation. Most importantly, Mr. Williams hasn't stated in any of the three affidavits he submitted in support of his petition that he would have entered into a plea agreement but for his attorney's advice; instead, Mr. Williams' affidavits (like the remaining claims of his § 2255 petition) contain only his claims of innocence and allegations about various conspiracies against him. Mr. Williams hasn't established prejudice and so can't prevail on his claim of ineffective assistance of counsel relating to the prediction of his sentence.

*(3) Lack of a Laboratory Report and Drug Test Results*

Mr. Williams next claims Mr. Stevens was ineffective for not objecting to the government's failure to collect, test, and preserve exculpatory evidence. Mr. Williams contends the government "put on unreliable witnesses to testify that the movant sold them crack, powder, and fake cocaine, . . . the alleged substance that could undoubtedly proved the movant's innocents." Petr. Memo., at 52. Mr. Williams maintains that because the government didn't produce a laboratory report or drug analysis results, there was no probable cause to charge and convict him. Mr. Williams argues, too, that the court "lacked jurisdiction because without a proper foundation of a laboratory report being made by a chemist, the substance has not been found to have violated the laws of the United States." Petr. Memo., at 26. Mr. Williams concludes that "if it were not for counsel's unprofessional deficient performance the outcome of the trial would have been different." Petr. Memo., at 54.

The government responds that no tests were performed or reports issued because no physical evidence was gathered. The government represents that it didn't undertake any controlled buys or recover any guns, and no physical evidence, exculpatory or otherwise, was collected, and so, the government says, it had no obligation to obtain or produce laboratory or drug test reports. *See* Resp., at 16-18; 25-26. The government explains that it based its case on testimony from many people who had bought drugs from Mr. Williams and/or saw Mr. Williams with firearms during those drug transactions.

Mr. Williams has presented nothing to challenge the reasons offered by the government regarding the lack of physical evidence; he merely offers his opinion that the government didn't "act in normal practice when it did not gather potentially useful evidence" and claims that he "has a constitutional privilege to have the exculpatory evidence in his hand." Reply, at 13. Mr. Williams is mistaken. "[T]he government's duty to preserve evidence does not impose a duty to obtain evidence." Birdsong v. Cotton, No. 1:05-CV-283, 2009 WL 126709, at *3 (S.D. Ind. Jan. 20, 2009). "[T]he government has no duty to produce evidence outside of its control, and it is not responsible for the preservation of evidence that was never in its control in the first place." United States v. Hughes, 211 F.3d 676, 688 (1st Cir. 2000). Too, "there is no evidentiary rule that requires the government to present fingerprint evidence or other physical evidence to prove that a defendant possessed a firearm." United States v. Acker, No. 1:06-CR-147, 2007 WL 273581, at *2 (N.D. Ill. Jan. 29, 2007).

So while Mr. Williams is correct that no laboratory reports or drug test results were produced before or during his trial, his unsupported claim that the lack of a laboratory report deprived this court of jurisdiction is without merit, and his summary conclusion that the government acted in bad faith and deprived him of a fair trial by not producing lab reports or test results relating to evidence it never possessed is insufficient to establish a due process violation. *See* United States v. Jumah, 599 F.3d 799, 809 (7th Cir. 2010) ("[A] defendant cannot demand a new trial based on 'mere speculation' or 'unsupported assertion[s] that

the government suppressed evidence.'"); <u>United States v. Allen</u>, 358 Fed. Appx. 697, 700, 2009 WL 5033917, at *3 (7th Cir. 2009) ("[T]he jury was entitled to credit [the witnesses'] testimony over any lack of physical evidence."). Mr. Williams hasn't pointed to any action or inaction by his attorney that would create a reasonable probability that the result of his trial would have been different or a possibility that he suffered prejudice as a result of his trial counsel's performance on this issue. Mr. Stevens wasn't ineffective for not raising a frivolous argument. *See* <u>Fuller v. United States</u>, 398 F.3d 644, 652 (7th Cir. 2005) ("Because a defendant's lawyer has an obligation to be truthful and forthright with the court, he has no duty to make a frivolous argument.").

Mr. Williams also complains that his counsel didn't hire an independent chemist to testify for the defense. Mr. Williams says he should have been allowed to "exercise his confrontation clause right before trial to call his own analyst to testify for the defense," Petr. Memo., at 24, and claims the government deprived him of that right by failing to admit a laboratory report. Mr. Williams has offered no information about what tests could have been performed or what testimony an independent chemist could have offered when no drugs or guns were available for testing. The government represents that it had no physical evidence, *see* Resp., at 17 ("Because Williams was arrested on other charges shortly after federal officials began investigating, the government did not have an opportunity to gather physical evidence against Williams."), and at 26 ("Nor is there any evidence that the government even could have discovered and [the government couldn't have]

8

preserved the crack cocaine Williams sold, as it was presumably consumed soon after the sale and before the government's investigation was launched."), and Mr. Williams hasn't presented anything to suggest that the government withheld any exculpatory evidence from the defense. *See* United States v. Jumah, 599 F.3d 799, 808-809 (7th Cir. 2010) ("The defendant has the burden to establish that a *Brady* or *Giglio* violation occurred."). Contrary to Mr. Williams' claim, the issue of whether his counsel should have hired an independent chemist to testify on his behalf doesn't implicate the Confrontation Clause. *See* Barber v. Page, 390 U.S. 719, 725 (1968) ("The right to confrontation is basically a trial right. It includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness."); United States v. Scott, 145 F.3d 878, 888 (7th Cir. 1998) ("A criminal defendant has the right, as guaranteed by the Confrontation Clause of the Sixth Amendment, to "be confronted with the witnesses against him." (*quoting* U.S. Const. amend. VI)). Mr. Williams' claim that Mr. Stevens was ineffective for not employing an independent chemist has no merit.

*(4) Defense Witnesses Not Called to Testify*

Mr. Williams says Mr. Stevens provided ineffective assistance by not calling a number of people as witnesses for the defense. Mr. Williams says Demetrius Williams, Anthony Martin, Kelli Liester, Tajuanna Norris, Regina Morrell, Charles Gilliam, and Peggy Elezy should have been called as witnesses to offer testimony favorable to his defense. Mr. Williams admits that Mr. Stevens (or his investigator)

interviewed some of those people, but complains that Mr. Stevens didn't call them to testify at trial.[1]

Mr. Williams submits affidavits from

– Demetrius Williams, who says that while he worked and stayed with Jerome Williams, no drug transactions were conducted from their house, no guns or drugs were kept in their house, and Jerome Williams didn't carry guns or drugs to work. Mr. Williams says he helped Mr. Stevens' investigator in locating potential witnesses, but he wasn't called to testify. *See* Petr. Memo., Exh. D.

– Anthony Martin, who says he worked with Demetrius Williams and Jerome Williams and during that time Jerome Williams didn't deal drugs or carry a firearm while at work and Jerome Williams didn't store any guns at Mr. Martin's house. Mr. Martin says Mr. Stevens interviewed him but wasn't called to testify. *See* Petr. Memo., Exh. E.

– Tajuanna Norris, who says she "was to talk about [her] brother and his schooling and about what his job was – landscaping." Petr. Memo., Exh. F.

– Regina Morrell, who says she "was to testify about the hundreds of phone calls made to [her] phone at home and cell phone." Petr. Memo., Exh. G.

Mr. Williams says Kelli Liester, girlfriend of Demetrius Williams, would have testified that there weren't guns or drugs at the Williams' home and that Jerome

---

[1] Mr. Williams also says in his first affidavit that he asked his attorney to call as witnesses "others besides the witnesses listed in the complaint filed on the record in the court." Petr. Memo., Exh. A, ¶ 6. "Where a petitioner claims his trial counsel failed to call a witness, he must make a specific, affirmative showing as to what the missing evidence would have been and prove that this witness's testimony would have produced a different result." Patel v. United States, 19 F.3d 1231, 1237 (7th Cir. 1994). Because Mr. Williams hasn't provided any specifics about those unnamed witnesses and hasn't stated that he provided Mr. Stevens with the names of the unnamed people he now argues were important to his case, Mr. Stevens can't be found ineffective. An attorney cannot call witnesses of which he is unaware. *See* United States v. Farr, 297 F.3d 651, 658 (7th Cir. 2002) ("An ineffective assistance of counsel claim cannot rest upon counsel's alleged failure to engage in a scavenger hunt for potentially exculpatory information with no detailed instruction on what this information may be or where it might be found.").

Williams was at home on the night Melissa Shields was murdered; Charles Gilliam would have testified that while he was being held in a cell with Mike Singleton, a government witness, Mr. Singleton told Mr. Gilliam that he (Mr. Singleton) didn't really know Jerome Williams but was trying to buy a car from him; and Peggy Elezy would have testified that Ernie Bragg was an armed drug dealer and Jerome Williams didn't sell her any drugs. Mr. Williams claims that testimony from those witnesses would have been more credible than any testimony the government's witnesses offered, and would have exonerated him.

 "A lawyer's decision to call or not to call a witness is a strategic decision generally not subject to review. The Constitution does not oblige counsel to present each and every witness that is suggested to him." United States v. Best, 426 F.3d 937, 945 (7th Cir. 2005) (*quoting* United States v. Williams, 106 F.3d 1362, 1367 (7th Cir. 1997)). In deciding whether deficient performance occurred, the court considers factors like counsel's overall diligence, the likely relevance of the testimony of the uncalled witnesses, whether alternative ways of proving the point existed, and the strength of the government's case. United States v. Best, 426 F.3d 937, 945 (7th Cir. 2005).

Three defense witnesses were called to testify at trial: Cindy Bell testified that she bought crack from Ernie Bragg (who, on at least one occasion, pointed a gun at her) and Chris Deguch, but not from Jerome Williams; Christopher Nespo testified that he never bought drugs from Jerome Williams, but his girlfriend bought pain pills from Ernie Bragg; and Paul White admitted that he bought

cocaine from Ernie Bragg, said he and Jerome Williams were friends, and insisted he never bought drugs from Jerome Williams. Thus, the testimony from the people Mr. Williams says Mr. Stevens should have called would have been cumulative, and counsel's decision not to call the witnesses Mr. Williams speculates might have exonerated him must be viewed as a strategic decision. "It was entirely within counsel's discretion to decline calling a witness whose testimony he believed to be cumulative." <u>United States v. Monigan</u>, 128 F.3d 609, 612 (7th Cir. 1997). In addition, Mr. Stevens' decision to not to call Mr. Williams' brother (Demetrius Williams), sister (Tajuanna Norris), and mother (Regina Morrell) was likewise a reasonable trial strategy, "because family members can be easily impeached for bias." <u>Bergmann v. McCaughtry</u>, 65 F.3d 1372, 1380 (7th Cir. 1995).

Defense attorneys have an obligation to investigate potentially exculpatory witnesses, <u>Rompilla v. Beard</u>, 545 U.S. 374, 387 (2005) ("It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction." (*quoting* 1 ABA Standards for Criminal Justice 4-4.1)), and Mr. Williams admits that Mr. Stevens or his investigator conducted interviews with potential witnesses. Mr. Stevens called witnesses to testify that they never purchased drugs from Mr. Williams, but bought drugs from Ernie Bragg and Chris Deguch. In contrast, government witnesses gave detailed accounts of their experiences buying drugs from Mr. Williams.

"Where a petitioner claims his trial counsel failed to call a witness, he must make a specific, affirmative showing as to what the missing evidence would have been, and prove that this witness's testimony would have produced a different result." Patel v. United States, 19 F.3d 1231, 1237 (7th Cir. 1994). That some people might not have bought drugs from Mr. Williams or seen Mr. Williams selling drugs or carrying a firearm doesn't constitute evidence sufficient to exonerate Mr. Williams and doesn't render the testimony of those uncalled witnesses so obviously crucial to Mr. Williams' defense that Mr. Stevens' decision to not call them rendered his performance constitutionally deficient. Mr. Williams hasn't shown a reasonable probability that the outcome of his trial would have been different had Mr. Stevens called the witnesses at issue, and he isn't entitled to the relief he seeks based on his claim of ineffective assistance of counsel in this regard.

*(5) Dismissal Motion Based on Lack of Probable Cause*

Mr. Williams faults Mr. Stevens for not moving to dismiss the indictment. According to Mr. Williams, Mr. Stevens should have argued that the indictment lacked probable cause because the supporting affidavit didn't establish probable cause, the informants weren't taken before a magistrate judge to determine their reliability, and the agent didn't affirm the informants' reliability. Mr. Williams claims Mr. Stevens was ineffective "for failing to investigate into how the movant

was indicted on a false and reckless, bare bone affidavit alone." Petr. Memo., at 44.

Mr. Williams first claims Agent Bayne Bennett's "bare bone affidavit didn't supply sufficient information to get probable cause." Petr. Memo., at 39. The court can't agree. Probable cause is only a probability or substantial chance of criminal activity, not a certainty that a crime was committed. <u>Illinois v. Gates</u>, 462 U.S. 213, 244 n.13 (1983). Agent Bennett's affidavit detailed the specifics of St. Joseph County Metro Homicide Detectives' interviews of five people who each independently identified Mr. Williams as a person from whom they had purchased drugs. "The complaint of a single witness or putative victim alone generally is sufficient to establish probable cause to arrest unless the complaint would lead a reasonable officer to be suspicious, in which case the officer has a further duty to investigate." <u>Beauchamp v. City of Noblesville, Ind.</u>, 320 F.3d 733, 743 (7th Cir. 2003). Even though nothing suggests that Agent Bennett was suspicious of the information received from the county police or the informants, he investigated further and then described in his affidavit the specifics of the interviews he conducted with two more people who told him they had purchased drugs from Mr. Williams. All seven interviewees provided similar information about Mr. Williams' appearance, place of residence, and known associates, the drugs he had available for sale, and the methods and places of delivery of the drugs. The facts Agent Bennett gathered from county police officers and through his own independent investigation strongly suggest that Mr. Williams was involved in drug trafficking

activities, thereby establishing a substantial basis for a finding of probable cause.

Mr. Williams next claims that probable cause wasn't established because the informants didn't sign affidavits and weren't taken before a magistrate judge and Agent Bennett didn't affirm the reliability of the informants. When, as here, an affidavit is the only evidence presented to the magistrate judge in support of a warrant and the magistrate judge hears no live testimony, "the validity of the warrant depends on the strength of the affidavit." United States v. Carson, 582 F.3d 827, 832 (7th Cir. 2009). "Further, when an informant supplies the facts in the affidavit, the probable cause determination will also turn on the informant's credibility." United States v. Bell, 585 F.3d 1045, 1049 (7th Cir. 2009). The court considers the extent to which police corroborated the informant's statements, whether the informant's knowledge of the events was based in personal observation, the amount of detail in the affidavit, the time between what the informant described and the application for the warrant, and whether the informant testified at a probable cause hearing. United States v. Carson, 582 F.3d 827, 832 (7th Cir. 2009). None of the factors is determinative: "a deficiency in one factor may be compensated for by a strong showing in another or another indicator of reliability." United States v. Carson, 582 F.3d 827, 832 (7th Cir. 2009).

While Agent Bennett might not have specifically affirmed the reliability of the informants identified in his affidavit, the facts supplied by Agent Bennett were gathered from police interviews with seven people who admitted to having

personally purchased drugs from, and/or delivered drugs for, Mr. Williams in mid-to-late 2007. None of the informants testified at a probable cause hearing, but all supplied similar details about Mr. Williams' appearance, place of residence, and known associates, the drugs he sold to them, and the methods and places of delivery of the drugs. Agent Bennett's affidavit was submitted to the magistrate judge in May 2008, six to eight months after the drug sales at issue.[2] Agent Bennett reported that the information from five of the informants was supplied to him by St. Joseph County Metro Homicide Detectives who were interviewing people in connection with a homicide investigation when Mr. Williams was identified as a distributor of crack cocaine; Agent Bennett, who reported having been involved in about 100 controlled substance investigations and 200 firearms investigations, personally interviewed the other two informants. Based on the totality of the circumstances – *i.e.*, that the information relied upon in support of probable cause was gathered from seven people who reported similar details about purchasing drugs from Mr. Williams based on their first-hand knowledge of the events reported – Agent Bennett's reliance on the facts supplied by the informants was reasonable, *see* United States v. Otero, 495 F.3d 393, 398 (7th Cir. 2007) ("An officer's decision to obtain a warrant is prima facie evidence that he or she was acting in good faith."), and his affidavit contains evidence sufficient to form a substantial basis for a finding of probable cause.

---

[2] Mr. Williams was arrested by state law enforcement officials on March 12, 2008 and so was in custody during part of that time. *See* Reply., Attachment, p. 2.

Mr. Williams' complaint that the government lacked probable cause to indict him because none of the informants testified before the grand jury is without merit, as well. According to Mr. Williams, because the informants didn't testify, the indictment was based on "mere allegations" made to the grand jury. "The validity of an indictment is not affected by the form of the evidence considered." United States v. Taylor, 154 F.3d 675, 681 (7th Cir. 1998). In fact, an indictment can be based entirely upon hearsay testimony. *See* Costello v. United States, 350 U.S. 359, 362 (1956) (no constitutional provision "prescribes the kind of evidence upon which grand juries must act."). "An indictment returned by a legally constituted and unbiased grand jury . . . is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more." Costello v. United States, 350 U.S. 359, 363 (1956). The lack of grand jury testimony by the informants Agent Bennett relied on doesn't defeat the grand jury's finding of probable cause, and Mr. Stevens had no duty to move to dismiss on this ground.

Mr. Williams lastly claims Mr. Stevens should have requested a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), to show that Agent Bennett disregarded the truth and based his affidavit on "unreliable witness information." A Franks hearing is held when a movant makes a "substantial preliminary showing" that the affidavit contained materially inaccurate information and the police knew the information in the affidavit was false or acted in reckless disregard of its truth. United States v. Dismuke, 593 F.3d 582, 588 n.1 (7th Cir. 2010). Mr. Williams hasn't made that showing: his disagreement with the information

supplied by the informants doesn't constitute a "substantial showing" that the information was inaccurate or that investigators had a reason to know or believe that the information was false. "Conclusory statements do not constitute a 'substantial preliminary showing.'" United States v. Taylor, 154 F.3d 675, 680 (7th Cir. 1998). Mr. Williams hasn't established that a Franks hearing was needed or that Mr. Stevens was ineffective for not requesting such a hearing. Mr. Williams isn't entitled to the relief he seeks based on his claim that his counsel was ineffective for not filing a motion to dismiss based on a lack of probable cause.

*(7) Dismissal Motion Based on Vindictive and Retaliatory Prosecution*

Mr. Williams says Mr. Stevens should have filed a motion to dismiss the indictment based on vindictive prosecution and retaliation. Mr. Williams claims his prosecution in this court was undertaken in retaliation for his exercising his constitutional right to demand a jury trial in state court "to protest the fraudulent allegations . . . that [he] had committed a crime of burglary with bodily harm." Petr. Memo., at 55. Mr. Williams speculates that while he was in custody on state charges of battery with bodily harm, South Bend Police Department detectives began conspiring with federal agents "in an effort to convict the movant with the battery with bodily harm and charge the movant with murder." Petr. Memo., at 56-57. According to Mr. Williams, when a state court jury found him not guilty on the battery charge, federal officials undertook a vindictive prosecution in this court, as shown by the state prosecutor having possessed the same evidence

relied on in this prosecution but filing no drug or gun charges against him. Mr. Williams claims, too, that when federal officials initiated the charges against him, they departed from the "usual procedurals" by not gathering exculpatory evidence, conducting a sloppy investigation, failing to meet their constitutional duties, "'brazenly' defying court orders," and "letting witnesses lie on the stand." Petr. Memo., at 61-63. Mr. Williams summarily concludes that "had it not been for counsel unprofessional performance in not making a objection to the prosecutor vindictive prosecution it is a reasonable probability that there could have been different out come at trial." Petr. Memo., at 63.

The Constitution prohibits the government from undertaking a prosecution based solely on a vindictive motive. <u>United States v. Jarrett</u>, 447 F.3d 520, 524 (7th Cir. 2006). Government prosecutors, however, have "wide discretion over whether, how, and when to bring a case. 'In the ordinary case, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file . . . generally rests entirely in his discretion.'" <u>United States v. Jarrett</u>, 447 F.3d at 525 (*quoting* <u>United States v. Armstrong</u>, 517 U.S. 456, 464 (1996)). To make out a vindictive prosecution claim, then, Mr. Williams "must affirmatively show through objective evidence that the prosecutorial conduct at issue was motivated by some form of prosecutorial animus." <u>United States v. Cooper</u>, 461 F.3d 850, 856 (7th Cir. 2006) (*quoting* <u>United States v. Falcon</u>, 347 F.3d 1000, 1004 (7th Cir. 2003)). Mr. Williams must convince the court that he wouldn't

19

"have been prosecuted but for the government's animus or desire to penalize him."
United States v. Jarrett, 447 F.3d at 525. He hasn't done so.

Mr. Williams has identified no objective evidence of actual vindictiveness by government officials or that his prosecution in this court was motivated by any improper motive or prosecutorial animus. *See* United States v. Segal, 495 F.3d 826, 832-833 (7th Cir. 2007) ("[A] defendant must affirmatively show that the prosecutor was motivated by animus."). A showing of "actual vindictiveness requires 'direct' evidence, such as evidence of a statement by the prosecutor." United States v. Johnson, 221 F.3d 83, 94 (2d Cir. 2000). Mr. Williams hasn't set forth any such statement, nor has he identified any evidence that the federal prosecutor had a personal stake in the outcome of the case or was trying to seek self-vindication. United States v. Jarrett, 447 F.3d at 525. And the state officials' decision to not prosecute him on drug and gun charges doesn't establish that the federal prosecution was based on an improper motive: "[t]he fact that a federal prosecution occurred after an unfavorable result in a state court does not, in and of itself, demonstrate vindictiveness on the part of the federal prosecutor." United States v. Spears, 159 F.3d 1081, 1087 (7th Cir. 1998) ("it is very difficult to sustain a claim of vindictive prosecution where two separate sovereigns are involved"); *see also* United States v. Algee, 309 F.3d 1011, 1015 (7th Cir. 2002) ("[T]he fact that there was some overlap between the personnel in the state prosecutor's office and the United States Attorney's office does not support a finding of prosecutorial vindictiveness."); United States v. Thornton, No. 09-CR-92,

2010 WL 56025, at *3 (W.D. Wis. Jan. 6, 2010) ("It was not vindictive for the government to bring new charges in a new court when [the defendant] chose to put the state prosecutor to the burden and uncertainty of a jury trial."). Mr. Williams hasn't carried his burden of demonstrating any discriminatory intent on the part of the government officials involved with his prosecution in this court. *See* United States v. Jarrett, 447 F.3d at 525 (the "'presumption of regularity' in prosecutorial decision making can only be overcome by clear evidence to the contrary").

Mr. Williams' non-specific, unsupported claims that government officials conducted a sloppy investigation, defied court orders, and didn't meet their constitutional obligations have no merit, and his personal disagreement with the government's decision to indict him on drug and gun charges is insufficient to establish any prosecutorial animus or other wrongdoing by government officials. Because a motion to dismiss based on vindictive or retaliatory prosecution would have been frivolous, Mr. Stevens wasn't ineffective for not filing such a motion.

*(8) Suppression Motion Based on False Trial Testimony*

Mr. Williams complains that his counsel didn't file a motion to suppress challenging the trial testimony of government witnesses Calvin Wells and Chris Deguch. Mr. Williams' claim that his counsel should have challenged witness testimony by filing a motion to suppress has no merit. Federal Rule of Criminal Procedure 12(b)(3)(C) requires that a motion to suppress be filed before trial. *See*

United States v. Salahuddin, 509 F.3d 858, 860 (7th Cir. 2007) ("A motion to suppress evidence must be filed prior to trial."). Mr. Stevens couldn't be expected or required to file a motion to suppress trial testimony before the trial took place; cross-examination of witnesses would be the proper course to challenge trial testimony. Mr. Williams hasn't set forth any arguments that Mr. Stevens could or should have made in a motion to suppress properly filed prior to trial, so his claim of ineffective assistance of counsel in this regard must be denied. *See* United States v. Cieslowski, 410 F.3d 353, 360 (7th Cir. 2005) ("When a claim of ineffective assistance is based on counsel's failure to present a motion to suppress, . . . a defendant [must] prove the motion was meritorious."); United States v. Woody, 55 F.3d 1257, 1272 (7th Cir.1995) ("Without a detailed explanation of the instances of his attorney's errors as well as their effect on the result, we cannot evaluate [defendant's] Sixth Amendment claim.").

Mr. Williams says Messrs. Wells and Deguch testified falsely – Calvin Wells testified falsely that Mr. Williams "was a violent person that carries a gun and will shoot," and Chris Deguch "consistently [gave] information in which there is no evidence of a crime committed by the movant" – and had Mr. Stevens properly challenged that testimony, the lack of evidence against him would have been exposed to the jury and the outcome of his trial would have been different. Mr. Williams' claims can't succeed in the fact of the record of this case.

The record shows that in response to questions from Assistant United States Attorney Schmid, Mr. Wells told the jury he was a drug user, he was in

state custody facing felony drug charges, and he hadn't received any promises from government officials in exchange for his testimony. Mr. Wells also testified that he hadn't purchased drugs from Mr. Williams, but he had stolen a watch from Mr. Williams and Mr. Williams fired a gun at him a week later. Mr. Stevens cross-examined Mr. Wells on each of those points, and Mr. Wells confirmed his original testimony. *See* Trial Tr., at 241-256. Thus, Mr. Williams is wrong when he says Mr. Stevens didn't challenge Mr. Wells' testimony.

The record shows that Chris Deguch testified that he was a drug user who bought drugs from Mr. Williams on a weekly basis, he had several felony convictions for which he had spent time in prison, he was facing state felony charges when he testified, and the federal officials told him they tell state officials about his cooperation if he testified against Mr. Williams. Mr. Stevens cross-examined Mr. Deguch on each of those points, and Mr. Deguch confirmed his testimony. Thus, contrary to what Mr. Williams says, Mr. Deguch did offer testimony about a crime committed by Mr. Williams, *see* Trial Tr., at 165-201, and Mr. Williams is wrong when he says Mr. Stevens didn't challenge Mr. Deguch's testimony.

Weighing a witness' testimony is the jury's job. <u>United States v. Nunez</u>, 532 F.3d 645, 652 (7th Cir. 2008); *see also* <u>United States v. Rollins</u>, 544 F.3d 820, 835 (7th Cir. 2008) ("It is up to the jury to weigh the evidence and determine the credibility of the witnesses; [courts] do not second-guess the jury's assessment of the evidence."). The jury saw the witnesses testify and could make its own

credibility findings "even in the face of some internal conflicts [in their testimony]." United States v. Smith, 308 F.3d 726, 746 (7th Cir. 2002); *see also* United States v. Buchmeier, 255 F.3d 415, 420 (7th Cir. 2001) ("[I]t is not [the court's] role, when reviewing the sufficiency of the evidence, to second-guess a jury's credibility determinations."). Mr. Williams' hasn't established any "exceptional circumstances" that would support a challenge to any witness' testimony, "such as where it was physically impossible for the witness to observe that which he claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all." United States v. Ray, 238 F.3d 828, 834 (7th Cir. 2001). That the jury chose to believe testimony that Mr. Williams says was false doesn't create one of the "exceptional circumstances" that would permit the court to superimpose its own credibility determination over the jury's. "'[A]bsent extraordinary circumstances,' this court will not reevaluate the testimony of a witness to determine his or her motives or other possible measures of reliability." United States v. Buchmeier, 255 F.3d 415, 420 (7th Cir. 2001).

Mr. Williams also claims the government withheld exculpatory evidence, *i.e.*, transcripts of police interviews with Chris Deguch and Ernie Bragg, which deprived him of a fair trial. The court addressed and rejected this same argument in connection with Mr. Williams' request to amend his § 2255 petition:

> Mr. Williams claims that the interview materials he seeks were never disclosed to the defense, but the trial transcript disproves his claim: during cross-examination of Ernie Bragg and Chris Deguch, Mr. Williams' counsel questioned each man about his drug use, criminal record, and involvement with Mr. Williams and also asked each man

> specific questions from and about the statements they made to police, establishing that Mr. Bragg's and Mr. Deguch's prior statements to police were made available to the defense before trial. *See* Tr., at 184-200 (C. Deguch); 284-311 (E. Bragg).

Opinion and Ord. (Feb. 25, 2011), at 2. Mr. Williams hasn't come forward with any new arguments or evidence that would support a different conclusion or warrant the court's reconsideration of the issue.

Mr. Williams claims that the government withheld witness statements and Mr. Stevens didn't challenge testimony offered by government witnesses at trial have no merit. He's not entitled to relief based on his claim that his counsel was ineffective in these ways.

## *(9) Motion for Acquittal*

Mr. Williams claims that because Mr. Stevens didn't renew a motion for acquittal at the close of all the evidence, he was denied the right to appeal the insufficiency of the evidence. Mr. Williams claims, too, that because the testimony of unreliable witnesses amounted to "no evidence" against him, the court would have granted a properly made motion for acquittal and the outcome of his trial and appeal would have been different. The court can't agree.

Mr. Williams' counsel made an oral motion for acquittal at the close of the government's case, which was denied (Trial Tr., at 367); the motion wasn't renewed at the close of the evidence. Even though counsel didn't renew the motion, the issue of the sufficiency of the evidence was raised on appeal, *see*

Appellant's Br. (filed May 27, 2009 in Seventh Circuit Cause No. 09-1924), at ii (Issue 3: "The evidence was insufficient to convict Mr. Williams of distributing more than fifty (50) grams of crack cocaine (21 U.S.C. § 841(a)(1)) and possessing a firearm in furtherance of a drug trafficking crime(18 U.S.C. § 924(c))."), and that claim was rejected by the court of appeals. *See* <u>United States v. Williams</u>, 584 F.3d 714, 714-715 (7th Cir. 2009) ("The only questions presented by his appeal that require discussion (the defendant's other grounds for appeal are either foreclosed by recent circuit precedent or frivolous) are whether the government complied with 21 U.S.C. § 851(a)(1), the 'notice of enhancement' statute, and if not whether the defendant is entitled to be resentenced."). Thus, the record doesn't support Mr. Williams' claim that he was denied the right to appeal the sufficiency of the evidence.

Even if the court assumed that the non-renewal of the motion for judgment of acquittal was deficient performance, Mr. Williams still must establish prejudice: he must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland v. Washington</u>, 466 U.S. 668, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>

To succeed on a motion for judgment of acquittal, Mr. Williams would have had to convince the court that "the evidence, looked at in the government's favor, [was] so scant that the jury could only speculate as to the defendant's guilt." <u>United States v. Howard</u>, 179 F.3d 539, 542 (7th Cir. 1999). "[I]n assessing the

sufficiency of the evidence, the court [could] not re-weigh the evidence or judge the credibility of the witnesses." United States v. Kimoto, 560 F. Supp. 2d 680, 682-683 (S.D. Ill. 2008). Because the court would have concluded, drawing all reasonable inferences in favor of the government, that a reasonable jury could have found that the evidence – testimony from nine witnesses who said they purchased drugs from Mr. Williams, saw Mr. Williams selling drugs to others, delivered drugs for Mr. Williams, and/or saw Mr. Williams carrying a firearm – supported a conclusion that each of the necessary elements had been proved beyond a reasonable doubt, Mr. Williams' couldn't have succeeded on a motion for a judgment of acquittal and such a motion would have been denied. Therefore, Mr. Williams can't show that he was prejudiced by Mr. Stevens' non-renewal of the motion for judgment of acquittal. Mr. Williams' unsupported, conclusory opinions that the government's case against him was "devoid of relevant evidence" and that "no trier of fact . . . should of found the movant guilty" are insufficient to establish prejudice, and he can't prevail on his claim of ineffective assistance of counsel on this issue.

Mr. Williams hasn't established that Mr. Stevens' acts or omissions relating to the issues addressed so far were "outside the wide range of professionally competent assistance." Strickland v. Washington, 466 U.S. at 690. Mr. Williams hasn't shown that Mr. Stevens' performance relating to those issues fell below an objective standard of reasonableness and that "the [alleged] deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. at 687. Nor has Mr.

Williams demonstrated "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Taylor v. Bradley, 448 F.3d 942, 948 (7th Cir. 2006). Mr. Williams hasn't carried his burden of establishing his ineffective assistance of counsel claim with respect to issues (1) and (3)-(9) and he isn't entitled to the relief he seeks.

## II. Ineffective Assistance of Sentencing/Appellate Counsel

Mr. Williams claims, too, that his second attorney, David Jones, was ineffective at sentencing and on appeal. Like his claim of ineffective assistance of trial counsel, the two-part test of Strickland v. Washington, 466 U.S. 668 (1984), governs Mr. Williams' claims about Mr. Jones. "That means that he must show both that his lawyer's performance was unreasonably deficient and that this inadequacy prejudiced him in the sense that there is a reasonable probability that his case would have been remanded for a new trial or that the decision of the . . . trial court would have been otherwise modified on appeal." Howard v. Gramley, 225 F.3d 784, 789-790 (7th Cir. 2000).

### *Sentencing*

Mr. Williams complains that at sentencing Mr. Jones didn't object to his sentence being based on distribution of more than 50 grams of cocaine. Mr. Williams is wrong. Mr. Jones objected to the recommendations of the presentence investigation report, contained in paragraphs 10, 17-20, and 30, relating to the

aggregate drug quantity. *See* Sent. Tr. (Mar. 9, 2009), at 3. Mr. Jones cross-examined Agent Bennett at the sentencing hearing about the government's drug quantity calculation and highlighted that police recovered no drugs and that most of the witnesses against Mr. Williams were prisoners, drug addicts, and/or worked as prostitutes to get money to buy drugs. *See* Sent. Tr. (Mar. 9, 2009), at 18-23. Mr. Jones argued further on Mr. Williams' behalf:

> Your Honor, there's no appropriate sentence for a person like Mr. Williams who proclaims his innocence, so our objections to the presentence investigation report start with the premise that Mr. Williams is not guilty of what the jury said he was guilty of, and that places us in a difficult place to start at a sentencing hearing. . . .
>
> We are mindful of Application Note 12 and the line of cases that say that the judge can use reasonable estimates in drug quantity, and my cross-examination of Officer Bennett was really my argument to the court. It's really a notion of sufficiency, that there was no audio or video. There's no experts or chemists. There was nobody weighing or testing the quantity or quality of drugs. No actual drugs were ever admitted into evidence. No one has actually even seen the 1758 grams of cocaine that could potentially send Mr. Williams away for the rest of his life, no confidential informants and no controlled buy. He was convicted by the mere works of prostitutes, crackheads, con artists, and, at times, if I read the trial testimony correctly, people that admitted that they lied on the stand.

Sent. Tr. (Mar. 9, 2009), at 23-24.

To the extent Mr. Williams also claims that Mr. Jones was ineffective for not reviewing the presentence investigation report with him, *see* Petr. Memo., at 7 ("The performance of counsel for Mr. Williams fell below an objective standard of reasonableness during the pretrial, trial, sentencing, and direct appeal process when counsel failed to go over the presentence report (PSR) with the movant . . . ."), Mr. Williams hasn't set forth any allegations or argument on this issue relating

to Mr. Jones so his claim is waived. *See* <u>United States v. Manjarrez</u>, 258 F.3d 618, 626 (7th Cir. 2001) (single sentence without any supporting argument or citation to pertinent authority deemed waived).

Mr. Williams hasn't carried his burden of demonstrating that Mr. Jones' performance at sentencing was deficient and that "the deficient performance prejudiced the defense." <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). Mr. Williams claim that Mr. Jones provided ineffective assistance at sentencing will be denied.

*Appeal*

Mr. Williams lastly argues that Mr. Jones was ineffective on appeal because Mr. Jones didn't raise non-frivolous issues and didn't raise the issues Mr. Williams believed to be the strongest. According to Mr. Williams, Mr. Jones should have raised the following issues on appeal: the court committed error in denying the movant's motion to suppress the statements of the government witnesses; his conviction violated his rights under Fifth and Sixth Amendments to the United States Constitution; the government failed to submit a laboratory report or test results of the substances at issue; and because there was no laboratory report, no probable cause existed to charge him. Mr. Williams claims he informed Mr. Jones of "cases and issues with merits that could of possibly freed him, and counsel disregarded it in briefing." Petr. Memo., at 71-72.

No motion to suppress was filed or denied (*see supra* Part I.(8)), so, contrary to Mr. Williams' claim, the issue wasn't one properly raised on appeal. *See* Whitehead v. Cowan, 263 F.3d 708, 731 (7th Cir. 2001) (appellate counsel "certainly do not have to present losing arguments"). Even if Mr. Williams believed the issue of ineffective assistance of trial counsel should have been raised on appeal, a claim of ineffective assistance of trial counsel is best raised in a motion under 28 U.S.C. § 2255. *See* United States v. Pergler, 233 F.3d 1005, 1009 (7th Cir. 2000) (appellate court is "generally reluctant to hear ineffective assistance of counsel claims on direct appeal because most trial records, unsupplemented by a 28 U.S.C. § 2255 [motion], lack the evidence necessary to fashion a successful claim."); United States v. Gilliam, 255 F.3d 428, 437 (7th Cir. 2001) (noting that limitation to the record on direct appeal "almost invariably dooms" ineffective counsel claims). And because the government had no obligation to obtain evidence or test evidence of which it wasn't in possession and the lack of physical evidence didn't destroy the finding of probable cause (*see supra* Part I.(3) & (6)), Mr. Jones had no duty to present those losing arguments on appeal. *See* Whitehead v. Cowan, 263 F.3d 708, 731 (7th Cir. 2001) (("Appellate lawyers are clearly not incompetent when they refuse to follow a 'kitchen sink' approach to the issues on appeals.").

Mr. Williams has no constitutional right to force "counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." Jones v. Barnes, 463 U.S. 745,

751 (1983). Mr. Jones chose three key issues for appeal: (1) whether the government's notice under 21 U.S.C. § 851(a)(1) was sufficient to notify Mr. Williams that he could be sentenced to a mandatory life term; (2) whether the court erred in sentencing Mr. Williams to a five-year term (based on his conviction under 18 U.S.C. 924(c)) in addition to a mandatory life sentence; and (3) whether the evidence was sufficient to convict Mr. Williams of distributing more than fifty grams of crack cocaine and possessing a firearm in furtherance of drug trafficking activity. Though not successful, appellate counsel was within his rights to exercise his independent judgment in determining which issues to present on appeal. As already noted, the issues Mr. Williams now claims should have been raised on appeal are without merit, and Mr. Jones was well within his professional judgment to not raise those arguments on appeal. *See* <u>Woods v. United States</u>, No. 09-C-4925, 2009 WL 3787904, at *7 (N.D. Ill. Nov. 12, 2009) ("It is well-established that appellate attorneys do not have to present losing arguments to provide constitutionally effective assistance of counsel."). Mr. Williams offers nothing to suggest that Mr. Jones' decisions fell below an objective standard of reasonableness or prejudiced his defense in any way, and his claim that he received ineffective assistance of appellate counsel must be denied.

### III. MOTION FOR SUMMARY JUDGMENT

Mr. Williams has moved for summary judgment and immediate release based on his claim that the government admitted, in response to his § 2255

petition, that he "could not have been found guilty of the indictment, therefore there is no genuine materials issues of fact, thus immediate release is constituted." Mot., at 1. Mr. Williams' analysis of the government's response is erroneous, as already discussed. The government didn't concede that Mr. Williams is innocent of the charges of the indictment, so his motion for immediate release is denied.

## IV.  CONCLUSION

Based on the foregoing,

(1) Mr. Williams' motion to proceed *in forma pauperis* [docket # 103] is DENIED as unnecessary;

(2) Mr. Williams' motion for summary judgment and immediate release [docket # 127] is DENIED;

(3) Mr. Williams' petition filed pursuant to 28 U.S.C. § 2255 [docket # 101] is DENIED IN PART as discussed above; and

(4) Mr. Williams' request for appointment of counsel [docket # 104] is GRANTED.

Following appointment of counsel, a separate order will be entered setting an evidentiary hearing to address the remaining issues in Mr. Williams' § 2255 petition.

SO ORDERED.

ENTERED: __May 31, 2011__

__/s/ Robert L. Miller, Jr._____
Judge, United States District Court

cc:   J. Williams
      AUSA Schmid
      AUSA Hollar
      AUSA Kerkhof